to Waldo, and also claiming that, although he had demanded a bill of particulars of plaintiff, none had been furnished him. The court granted an adjournment until May 9, 1916. When this adjournment was taken, Mugler was on the stand being cross-examined by the defendant's attorney. On May 9, 1916 when the parties again appeared before the court, the defendants' counsel asked that the trial be taken up from the beginning and be retried. The plaintiff objected to this. His attorney produced the minutes of the trial, so far as it had gone, and handed them to the justice, and asked that the defendants' counsel proceed with the cross-examination of Mugler, who was the witness on the stand at the time of the adjournment. This the defendant refused to do, and insisted that the plaintiff proceed to retry the case, or that his complaint be dismissed. The plaintiff's attorney thereupon stated to the court that he had rested his case, that he had no further evidence to produce and asked for a judgment. The court below said:

"The defendant answers ready and asks for a dismissal of the complaint: is that it? Defendants' Attorney: Yes. The Court: The motion will be granted."

Clearly, the court had no power thus to throw the plaintiff out of court. The plaintiff had presented his entire case, and the trial was with the defendant. The minutes of the previous day's proceedings were in court, subject to the use of the justice, if needed by him, and not the slightest grounds were presented for a new trial, or even for a mistrial. The defendants should have been directed to proceed with the trial. Should this court merely reverse the judgment and order a new trial, the defendant would thereby profit by his own refusal to proceed.

Judgment reversed, with $30 costs, and judgment directed for the amount of the notes sued upon, with interest and appropriate costs in the court below. All concur.

---

· (173 App. Div. 403)

## In re WESTCHESTER TRUST CO.

(Supreme Court, Appellate Division, Second Department.  June 23, 1916.)

1. WILLS ⟜524(2)—CONSTRUCTION—DESIGNATION OF LEGATEES—CLASSES—
   SURVIVING "ISSUE" OF LIFE TENANT.
      Under a bequest in trust for a life estate and, at death of life tenant, "to her lawful issue," or, in default of such issue, to be divided among life tenant's brothers and sister, or descendants, where a son of life tenant predeceased her, leaving a widow and a sister, the sister took all; the gift to the "issue" of life tenant being a gift to a class determinable at her death, and the will showing an intent to keep the estate in the possession of testatrix' own descendants.
      [Ed. Note.—For other cases, see Wills, Cent. Dig. § 1117; Dec. Dig. ⟜ 524(2).]

2. WILLS ⟜524(1)—CONSTRUCTION—DESIGNATION OF LEGATEES—CLASSES.
      Where there is a gift of personalty to a class distributable on a future event, that class consists of those who answer the description and are capable of taking at the time of the distribution.
      [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1116, 1121; Dec. Dig. ⟜524(1).]

---

⟜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from Surrogate's Court, Westchester County.

In the matter of the judicial settlement of the account of the Westchester Trust Company, as substituted trustee, etc., of Margaret De Frate Hodgman, deceased. Appeal by Jane S. Van Etten from part of decree of Surrogate's Court. Reversed, with directions as to modifications, and as modified affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLETON, and PUTNAM, JJ.

C. L. Westcott, of New York City, for appellant.

Henry Willis Smith, of New York City, for respondent.

CARR, J. The only question involved on this appeal is one of law, namely, the construction of the fourth clause of the will of Margaret Hodgman, deceased. The particular provision requiring construction is the final subdivision of the fourth clause of the will, which reads as follows:

"And the remaining equal fifth part I give and bequeath to my executors, or those of them who shall qualify as such, and the survivors or survivor of them, in trust to hold the same during the life of my daughter Mary Louisa Seaman, and to pay her the net income thereof, semiannually, during her life, and upon her death, to pay and transfer the principal thereof to her lawful issue, or in default of such issue, to divide the same equally among her brothers and sister, the descendants of any deceased brother or sister to take the share their parent would have been entitled to if living."

When Mrs. Hodgman made this will, her daughter, Mary Louisa Seaman, had two living children, a son, Allan H. Seaman, and a daughter, Jane Seaman, now Jane Van Etten, and no other children were born of her subsequently. Allan died on the same day as his mother, Mary Louisa, the life tenant, but earlier in the day. He left no issue, but by a last will and testament he devised to his widow, Nina Von Bach Seaman, all his estate. His sister Jane Van Etten survived both his mother and himself, and was the only issue of Mary Louisa Seaman when the trust terminated. The question for decision is whether Allan took a vested remainder in the estate held in trust during his mother's life. If so, then the portion so vested passed to his widow under his will. If not, then the whole corpus of the trust fund passed to Jane Van Etten, his sister, as the only surviving issue of Mary Louisa Seaman. The surrogate of Westchester county decided that Allan took a vested alienable interest in the estate. The sister, Jane Van Etten, now appeals.

[1, 2] We think the surrogate was in error in deciding that Allan took a vested remainder. We think the gift to the "issue" of Mary Louisa Seaman was a gift to a class, determinable as it existed upon her death. It must be assumed that the one-fifth share of Mrs. Hodgman's estate, set apart for the life interest of Mary Louisa Seaman, was personalty, because Mrs. Hodgman's will worked an equitable conversion of her real property, if she died seised of any. Where there is a gift of personalty to a class distributable on a future event, that class consists of "those who answer the description, and are capable of taking at the time of distribution." Teed v. Morton, 60 N. Y. 502, 506; Delaney v. McCormack, 88 N. Y. 174, 183; Schmidt v.

Jewett, 127 App. Div. 376, 111 N. Y. Supp. 680, affirmed 195 N. Y. 486, 88 N. E. 1110, 133 Am. St. Rep. 815. This is the general rule. Is there any language in the will of Mrs. Hodgman to show a contrary intent? We think not, and we find language which indicates that the actual intent of the testatrix, Mrs. Hodgman, was in accord with the general technical rule. The whole "fourth" clause of her will shows that she desired to keep her estate in the possession of her descendants as long as she could do so safely, without violating the statute as to unlawful suspensions. The provision as to Mary Louisa Seaman is precisely the same as that made for Mrs. Hodgman's three sons and another daughter, Josephine Brower. All five provisions are for life estates in children of Mrs. Hodgman, with remainders over to the issue of the respective children, who, of course, should be descendants of the testatrix herself. Each of these provisions as to remainders over to the issue of the respective life tenants are qualified by the distinct provisions that in the event that the life tenants should leave no issue, then the respective estates were to vest in the brothers and sisters of the life tenant, if living, or in their descendants, if any should die during the running of the respective trusts.

It is quite an important circumstance, on the question of Mrs. Hodgman's testamentary intent, that she made these qualifying provisions as to each of the five separate trusts. They seem to indicate an intent to confine the distribution of the respective trust funds within the channels of her own descendants. If so, then neither Allan Seaman nor his sister took a vested remainder during the life of the mother, Mary Louisa. If they did, then he and his sister became possessed of an alienable interest which they could dispose of in such a manner that their respective interests could pass to a stranger, excluding even their own issue, if they left any, and thus thwarting the apparent testamentary plan of the testatrix, his grandmother, Mrs. Hodgman. Mrs. Hodgman's will bears every evidence of careful and skillful preparation by its draftsman. It is orderly in its arrangement and apt in its expression. As we see it, there is no ambiguity in it. Its proper interpretation would not disinherit the possible issue of such children of Mary Louisa Seaman who may have died during the running of the life estate, for such issue, if existing at the termination of the trust, would take directly by substitution. Schmidt v. Jewett, 127 App. Div. 376, 378, 111 N. Y. Supp. 680. The case at bar is not similar to those in Goodwin v. Coddington, 154 N. Y. 283, 48 N. E. 729; Matter of Brown, 154 N. Y. 313, 48 N. E. 537, and Connelly v. O'Brien, 166 N. Y. 406, 60 N. E. 20. In Goodwin v. Coddington and Connelly v. O'Brien, the court adopted an interpretation which would not exclude the issue, or children, of a remainderman who died during the running of the life estate; but that situation does not arise in this case. Nor, as we think, does this case fall within the rules applied in Matter of Brown, ut supra, in view of the substantially different language of this will.

The decree of the Surrogate's Court of Westchester County should be reversed in so far as it directs payment to Nina Von Bach Seaman as executrix of the last will of Allan Seaman, deceased, of any portion

of the trust fund, either corpus or accrued income, held in trust during the life of Mary Louisa Seaman, deceased; and it should be modified by directing the payment of said fund and accumulated income to the appellant Jane Van Etten, and, as so modified, affirmed, with costs. All concur.